UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM KATLYNN GRAY,<br><br>                Plaintiff,<br><br>    v.<br><br>KEN BENNETT; M. GEISEL; MARC A. AIELLO; JOHN DOE; JESSE SEGADELL; JOCELYN PATCHETT; VICKI GRIGGS; DR. DAWSON; UNNAMED CORIZON ADMINISTRATORS; MICAELA CATHEY; JULIE KELLER; JAMES FAIRGRIEVE; DR. CLAUDIA LAKE; DR. RICHARD CRAIG; DR. ELIASON; DR. MARY PERRIEN; KIM MILLER; RANDY BLADES; BRISTY DELAO; KATHLEEN NIEKO; S. TEATS; and CORIZON STAFF MEMBER HORTON,<br><br>                Defendants. | Case No. 3:12-cv-00321-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Plaintiff William "Katlynn" Gray, a prisoner in the custody of the Idaho Department of Correction (IDOC), is proceeding pro se and in forma pauperis in this civil rights action. Now pending before the Court are the following motions: (1) Defendants' Motion to Dismiss (Dkt. 29); (2) Plaintiff's Motion to Strike (Dkt. 35); and (3) Plaintiff's Motion for Sanctions (Dkt. 38).

**MEMORANDUM DECISION AND ORDER - 1**

The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. In the interest of avoiding delay, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1.

Because Plaintiff failed to exhaust available administrative remedies with respect to his claims, the Court will grant Defendants' Motion to Dismiss. Plaintiff's Motion to Strike and Motion for Sanctions will be denied.

## BACKGROUND

The facts relevant to Plaintiff's claims are set forth in the Court's Initial Review Order (Dkt. 7) and will not be repeated in detail here. In short, Plaintiff was housed for 21 days in the C-3 tier of the Mental Health Unit (MHU) at the Idaho Maximum Security Institution (IMSI) for the purpose of receiving an evaluation for Gender Identity Disorder. Defendants Geisel, Keller, Cathey, Lake, and Fairgrieve were members of Plaintiff's treatment team.

Plaintiff's Complaint initially asserted multiple claims against various Defendants. The Court reviewed Plaintiff's Complaint under 28 U.S.C. §§ 1915 and 1915A and allowed him to proceed on the following claims: (1) First Amendment claims against Defendants Cathey and Geisel for their alleged retaliatory actions in frequently searching and disorganizing Plaintiff's legal materials; and (2) Eighth Amendment claims against Defendants Geisel, Keller, Cathey, Lake, and Fairgrieve regarding the conditions of

**MEMORANDUM DECISION AND ORDER - 2**

confinement in C-3. (*See* Initial Review Order, Dkt. 7.)

Defendants Keller, Cathey, Lake and Fairgrieve waived service of process (Dkt. 11) and filed an Answer (Dkt. 18). Defendant Geisel also waived service (Dkt. 12), but has not filed an answer. On December 18, 2012, Plaintiff filed an Amended Complaint (Dkt. 17).

Defendants Keller, Cathey, Lake, and Fairgrieve filed the instant Motion to Dismiss on April 30, 2013 (Dkt. 29). Defendant Geisel joined the Motion on October 1, 2013. (Dkt. 47).

### REVIEW OF AMENDED COMPLAINT

The Court has now reviewed Plaintiff's Amended Complaint under 28 U.S.C. §§ 1915 and 1915A. The Amended Complaint is 130 pages long, with an additional 84 pages of exhibits, and the Court concludes that it does not comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Therefore, Plaintiff may not proceed on the Amended Complaint. *See Knapp v. Hogan*, ___ F.3d ___, 2013 WL 6801005, at *1 (9th Cir. Dec. 26, 2013) (holding, in the context of a three-strikes challenge, that failure to comply with Rule 8(a) constitutes a failure to state a claim for relief under the Prison Litigation Reform Act).

Plaintiff's initial Complaint (Dkt. 3), as limited by the Initial Review Order, remains the operative complaint in this case.

**MEMORANDUM DECISION AND ORDER - 3**

## PRELIMINARY MOTIONS

Plaintiff asks the Court to strike the Affidavit of Ashley Zortman, filed by Defendants on April 30, 2013 in support of their Motion to Dismiss. Plaintiff incorrectly asserts that the Zortman affidavit contains "expert opinion testimony, conclusionary [sic] statements, [and] irrelevant information" and lacks foundation. (Motion to Strike at 2.) Ms. Zortman is the Grievance Coordinator at IMSI. (Zortman Aff., Dkt. 31, at ¶ 2.) She therefore has personal knowledge of the prison's grievance logs and can testify as to their content. *See* Fed. R. Evid. 803(6). The affidavit contains facts that are relevant to Defendants' argument that Plaintiff did not exhaust his administrative remedies prior to filing suit. The Court will deny Plaintiff's Motion to Strike.

Plaintiff also seeks sanctions against Defendants for allegedly filing (1) an "egregiously late" reply brief in support of their motion to dismiss and (2) two affidavits along with their reply brief that "are conclusionary [sic], at times contradictory, and largely suggest expert opinions and information outside the realm of personal knowledge." (Memo. in Support of Motion for Sanctions, Dkt. 38-1, at 3.) The Court will deny Plaintiff's request for sanctions. The reply brief was untimely, but only by one day. *See* Loc. Civ. R. 7.1(a)(6) ("The time periods . . . automatically generated by CM/ECF for service do not supersede, alter or amend any otherwise applicable Federal or Local Rule specifying a different time period for service or method of computing time."); 7.1(b)(3) (reply brief due 14 days after service of response brief); Fed. R. Civ. 6(d) (allowing three

**MEMORANDUM DECISION AND ORDER - 4**

extra days for service in certain circumstances). The Court declines to issue sanctions on that basis, and it has considered Defendants' reply brief notwithstanding the one-day delay.

Further, the affidavit of Stacy Remacle and the second affidavit of Ashley Zortman, submitted with Defendant's reply, are based on personal knowledge and contain relevant information. Because Defendants' Motion to Dismiss is an unenumerated 12(b) motion that permits evidentiary submissions and is not based solely on the pleadings, the affidavits are acceptable. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). They also constitute fair response to Plaintiff's arguments and evidence submitted with his response to Defendants' Motion to Dismiss. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (stating, in the summary judgment context, that "where new evidence is presented in a reply . . . , the district court should not consider the new evidence without giving the [other party] an opportunity to respond") (internal quotation marks and alteration omitted). Therefore, the Court will deny Plaintiff's Motion for Sanctions.

Plaintiff also complains that Defendant Geisel's joinder in the other Defendants' Motion to Dismiss was untimely, though he has not filed a motion to strike the joinder. Although the Court notes that Defendant Geisel waited a substantial amount of time to join in the motion and that Defendant Geisel has not answered the Complaint or requested an extension of time, the other Defendants' arguments regarding exhaustion apply equally

**MEMORANDUM DECISION AND ORDER - 5**

to Defendant Geisel. Further, Plaintiff has not filed a motion for entry of default against Defendant Geisel. Thus, in the exercise of discretion, the Court will determine whether Plaintiff's claims can be sustained against each of the Defendants notwithstanding Geisel's failure to act in a more timely manner.

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

**1.      Standard of Law**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials must have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that is "subject to an unenumerated

**MEMORANDUM DECISION AND ORDER - 6**

Rule 12(b) motion rather than a motion for summary judgment." *Wyatt*, 315 F.3d at 1119. In deciding a motion to dismiss for lack of exhaustion, the Court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. If a prisoner has failed to exhaust his administrative remedies, the appropriate remedy is dismissal without prejudice. *Id.*

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012). Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937.

Administrative remedies will be deemed unavailable and exhaustion excused if an inmate shows that the required procedural steps were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. It is not enough that the prisoner was subjectively unaware of the proper administrative procedures. Exhaustion may be excused only if that lack of awareness was also "objectively reasonable." *Id.* at 1038.

2.   **IDOC Grievance Procedure**

The IDOC grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the most "appropriate staff member." (Zortman Aff., Dkt. 31, at ¶ 5.)

**MEMORANDUM DECISION AND ORDER - 7**

If the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance form. (*Id.* at ¶ 6.) A grievance form must be filed no later than 30 days after the incident giving rise to the grievance. (*Id.*)

When submitting a grievance, the inmate must attach a copy of the concern form, showing the inmate's attempt to settle the issue informally. Grievances must contain "specific information including the nature of the complaint, dates, places, and names." (*Id.* at ¶ 7.) The inmate can raise only one specific issue per grievance. "Staff must answer and return the grievance to the Grievance Coordinator within seven (7) working days." (*Id.*) After a "reviewing authority, who is usually a deputy warden," reviews the staff member's response, the inmate is notified of the disposition of the grievance. (*Id.*)

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision within 14 days of receiving the response to the grievance. (*Id.* at ¶ 9.) The "appellate authority," usually the head of the prison, must issue his or her decision on the appeal within 16 days. (*Id.* at ¶ 10.) Not until the completion of all three of these steps—concern form, grievance form, and grievance appeal—is the grievance process exhausted.

2.      **Plaintiff Did Not Exhaust Administrative Remedies**

Plaintiff was transferred to the C-3 tier of the MHU on May 8, 2012. Twenty-one days later, on May 29, 2013, Plaintiff was transferred to the Idaho Correctional Institution at Orofino (ICI-O). (Initial Review Order at 3-4.) Because grievances must be filed within

**MEMORANDUM DECISION AND ORDER - 8**

30 days of the challenged incident, Plaintiff was required to file a grievance regarding his retaliation and Eighth Amendment claims by the end of June 2012. Ms. Zortman has reviewed IMSI's grievance database and determined that between March 1, 2012, and June 30, 2012, Plaintiff filed seven grievances. (Zortman Aff. at ¶ 14.)

The first six grievances—all of which were fully exhausted—do not relate in any manner to the claims on which Plaintiff has been allowed to proceed in this action. (*See* Ex. D-I to Zortman Aff., Dkt. 32.) Rather, the grievances complained of the following: (1) the confiscation of Plaintiff's radio (Grievance No. 120000167); (2) a paralegal's failure to mail a document (Grievance No. 120000176); (3) a search of Plaintiff's legal materials (Grievance No. 120000182); (4) Defendant Fairgrieve's statement to Plaintiff that he should not talk to other inmates about legal matters or look at other inmates' legal materials (Grievance No. 120000241); (5) Plaintiff's migraine headaches (Grievance No. 120000242); and (6) a paralegal's refusal to provide Plaintiff with legal materials (Grievance No. 120000257). (*Id.*)

The seventh grievance submitted by Plaintiff did complain generally of Plaintiff's transfer to C-3, but it did *not* mention unconstitutional living conditions. Rather, Plaintiff challenged the property restrictions of the unit, including restrictions on legal materials. Thus, this grievance does not identify the conditions of Plaintiff's confinement as the specific "nature of [Plaintiff's] complaint," as required by IDOC policy. (Zortman Aff. at ¶ 7.) Moreover, although the grievance stated generally that Defendant Cathey and the

treatment team should be "investigated for retaliatory conduct," Plaintiff did not appeal the denial of that grievance. (Ex. J to Zortman Aff., Dkt. 32.) Because Plaintiff did not pursue the grievance through all three steps of the process, he did not exhaust his current civil rights claims.

Plaintiff asserts that he did, in fact, attempt to file three grievances specifically relating to his retaliation and conditions of confinement claims, but that the grievances were not processed. (Resp. to Motion to Dismiss, Dkt. 34, at 18-19.) The Court does not find this statement to be credible. If Plaintiff indeed attempted to file these three grievances, they would have been disclosed in the grievance log maintained by the IDOC. (*See* Zortman Aff. at ¶ 13, stating that since November 2007, all grievances are logged into the database, even if they are unprocessed for failure to comply with applicable grievance procedures). According to Zortman, Plaintiff's supposed three grievances do not appear in the grievance log, and the Court finds that he did *not* submit such grievances. *See Wyatt*, 315 F.3d at 1120 (stating that a court considering a motion to dismiss for failure to exhaust "may look beyond the pleadings and decide disputed issues of fact").

Defendants have met their burden of showing that Plaintiff did not exhaust the prison's grievance process. The burden now shifts to Plaintiff to establish that administrative remedies were unavailable. *Albino*, 697 F.3d at 1031.

**MEMORANDUM DECISION AND ORDER - 10**

### 3. Plaintiff Has Not Shown That Administrative Remedies Were Unavailable

Plaintiff makes several arguments that IDOC's grievance process was not available to him, but the Court is not persuaded.

#### A. Transfer from IMSI to ICI-O

First, Plaintiff claims that because he was transferred to ICI-O on May 29, 2012, he could no longer grieve any of the issues relating to his time in the MHU. However, IDOC policy expressly allows for grievances to be filed even if inmates are transferred to a different prison than the one to which the grievance is addressed. (Ex. C to Zortman Aff., Dkt. 31-1, IDOC 29-30.) Plaintiff has not shown that this policy is not generally followed by ICI-O or IMSI.

#### B. ICI-O's Alleged Obstructionist Policy

Plaintiff asserts that, even if the grievance policy theoretically allows for inter-facility grievances, administrative remedies were still unavailable to him, allegedly because (1) ICI-O has an obstructionist policy toward inmate grievances, (2) a non-defendant official at ICI-O told Plaintiff he could not file grievances regarding his treatment at IMSI, and (3) the grievance coordinator at IMSI did not respond to Plaintiff's requests "to file grievances with that facility" after his transfer to ICI-O. (Dkt. 34 at 3-5.)

Plaintiff's first argument is simply too general to constitute a specific showing that Plaintiff's administrative remedies in this particular case were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. Even considering the

**MEMORANDUM DECISION AND ORDER - 11**

affidavits of other offenders attesting to the difficulty of filing grievances, submitted with Plaintiff's response (Dkt. 34-3 at 1-13), the Court concludes there is insufficient credible evidence of an obstructionist grievance policy at ICI-O. Indeed, Plaintiff filed a total of 63 grievances while he was housed at ICI-O throughout 2011, 2012, and 2013. (Second Zortman Aff., Dkt. 36-1, at ¶ 4 & Ex. A.) Plaintiff's assertion that he was prevented from exhausting his current claims by an obstructionist policy is belied by the undisputed facts in the record.

Plaintiff asserts more specific facts with respect to his second argument, alleging that Stacy Remacle, a correctional officer at ICI-O, "told the plaintiff not to bother grieving issues from another I.D.O.C. facility while in the ICI-O." (Dkt. 34 at 4.) Remacle has submitted an affidavit stating that, although Remacle has no specific recollection of Plaintiff, Remacle would not have told Plaintiff anything of the sort due to Remacle's lack of knowledge of the grievance process. (Remacle Aff., Dkt. 36-2, at ¶ 3.)

As evidenced by the record itself and by Plaintiff's several other cases filed in this Court, Plaintiff clearly understands the grievance process—likely better than some correctional officers do. The Court finds that the sworn testimony of C/O Remacle is more credible than Plaintiff's and that Remacle did *not* misinform Plaintiff regarding inter-facility grievances.

Moreover, even if the Court were to assume that Remacle did tell Plaintiff he could not file inter-facility grievances, Plaintiff has still not established that he

**MEMORANDUM DECISION AND ORDER - 12**

subjectively believed that information. To excuse exhaustion, a plaintiff must show both that he *actually* did not know of the available procedures and that, objectively, his lack of knowledge was reasonable. *Albino*, 697 F.3d at 1037. But as shown by Plaintiff's own correspondence to Ashley Zortman after he was transferred back to ICI-O, Plaintiff was well aware of his ability to file inter-facility grievances.

With respect to the grievance regarding Plaintiff's access to legal materials, Grievance No. 120000257, Plaintiff sent the following concern form to Zortman on June 1, 2012:

> On 5/28/12 prior to my being notified of my impending transfer corporal Wayne Wilson allowed me to place an appeal on I-M 120000257 and a grievance on my being denied access to legal books on C-3 in the locked grievance box. This was while I was housed in C-3 62. *I have been moved to the ICI-O; please ensure I receive the appropriate responses*, if any, in a timely manner. *I will be attempting to file other grievances on my conditions of confinement, inter alia, while housed in the IMSI.*

(Ex. B to Second Zortman Aff., Dkt. 36-1 at 10) (emphasis added).

Zortman replied, stating, "Noted: Any responses will be sent to your current facility." (*Id*.) Zortman initially sent this reply to Plaintiff on June 18, 2012 and re-sent it on July 3, 2012, after Plaintiff wrote a second concern form stating he had not received it. (*Id*.) This exchange shows that Plaintiff understood quite well his ability to send inter-facility *concern forms*, and there is no credible evidence in the record to suggest that Plaintiff did not also understand his ability to send inter-facility *grievance forms*—the

**MEMORANDUM DECISION AND ORDER - 13**

next step in the grievance process.

Plaintiff's correspondence with Zortman in June 2012 also defeats his claim that he asked if he could file grievances with IMSI after his transfer but that Zortman failed to respond. (*See* Dkt. 34 at 5.) First, Zortman did respond. Second, Plaintiff never asked if he could file an inter-facility grievance; rather, his concern forms support the Court's conclusion that he already knew he could.

### C. Thirty-Day Deadline and Three-Grievance Limit

Plaintiff also claims the IDOC grievance process was unavailable because the policy allows inmates to have only three grievances pending at any given time and requires that any grievance be filed within 30 days of the incident giving rise to the grievance. However, the Supreme Court has made clear that proper exhaustion requires that a prisoner comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. The Court finds that the IDOC's deadlines and restrictions on the number of allowable grievances are reasonable. Additionally, Plaintiff has offered no credible evidence that he submitted any grievances regarding his current claims that were rejected based on the three-grievance limit.

### D. Plaintiff's Alleged Lack of Access to Grievance Materials in C-3

Plaintiff also states that the MHU had "restrictions on access to concern forms and

**MEMORANDUM DECISION AND ORDER - 14**

grievances," implying that he was unable to file a grievance while he was housed in C-3. (Dkt. 34 at 6.) Again, Plaintiff's grievance history refutes this contention. As he recognized in his own statement to Zortman in June 2012, Plaintiff filed a grievance on his alleged lack of access to legal materials—a claim upon which he has not been allowed to proceed—*while he was housed in the MHU.* (Ex. B to Second Zortman Aff., Dkt. 36-1 at 10.) Plaintiff does not explain why he could not *also* have filed and exhausted a grievance related to his retaliation or conditions of confinement claims.

### E. That Defendants May Have Been on Notice of Certain Claims Does Not Excuse Plaintiff's Failure to Exhaust His Current Claims

Finally, Plaintiff argues that Defendants were generally on notice of Plaintiff's retaliation and conditions of confinement claims, notwithstanding his failure to raise those specific issues in the grievances that he did file. (Dkt. 34 at 8.) This argument is contrary to *Jones v. Bock*, in which the Supreme Court held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but *it is the prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 923 (2007) (emphasis added). The IDOC's grievance policy requires that every grievance contain "specific information including the nature of the complaint, dates, places, and names." (Zortman Aff., Dkt. 31, at ¶ 7.) Therefore, raising issues other than those specifically related to Plaintiff's current retaliation and conditions of confinement claim does not suffice to exhaust available administrative remedies under the PLRA.

**MEMORANDUM DECISION AND ORDER - 15**

## CONCLUSION

Plaintiff did not exhaust his administrative remedies with respect to the only claims remaining in this action, and he has not met his burden of showing that those remedies were unavailable. Therefore, the Court will grant Defendants' Motion to Dismiss.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Dkt. 29) is GRANTED, and this entire action is DISMISSED without prejudice.

2. Plaintiff's Motion to Strike (Dkt. 35) is DENIED.

3. Plaintiff's Motion for Sanctions (Dkt. 38) is DENIED.

4. Plaintiff's letter and proposed temporary restraining order, construed as a motion for a temporary restraining order (Dkt. 46) is DENIED as moot given the final disposition of this case.



DATED: **January 27, 2014**

Honorable B. Lynn Winmill
Chief U. S. District Judge